IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANGELO MININNI, )
)
        Plaintiff, )
)
v. )
) Civil Action No. 14-305E
CAROLYN W. COLVIN, )
ACTING COMMISSIONER )
OF SOCIAL SECURITY, )
)
        Defendant. )

## OPINION

AND NOW, this 21st day of March, 2016, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 12) be, and the same hereby is granted, and the Acting Commissioner's motion for summary judgment (Document No. 15) be, and the same hereby is, denied. The Acting Commissioner's decision of April 30, 2013, will be vacated, and the case will be remanded to the Acting Commissioner pursuant to sentence 4 of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion.

When the Acting Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Acting Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and . . . the [Acting Commissioner's] responsibility to rebut it [should] be strictly construed. . . .'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)). These well-established principles dictate that the court remand this case to the Acting Commissioner for further proceedings as explained herein.

Plaintiff filed his SSI application on April 29, 2011, alleging disability due to depression, bipolar disorder, anxiety and anger issues. Plaintiff's application was denied. At plaintiff's request, an ALJ held a video hearing on April 17, 2013, at which plaintiff, who was represented by counsel, appeared and testified. On April 30, 2013, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on October 20, 2014, making the ALJ's decision the final decision of the Acting Commissioner. The instant action followed.

Plaintiff, who has a ninth-grade education, was 41 years old when he filed his application, which is classified as a younger individual under the regulations. 20 C.F.R. §416.963(c). Plaintiff does not have any past relevant work experience, and he has not engaged in substantial gainful activity at any time since he filed his application.

After reviewing plaintiff's medical records and hearing testimony from plaintiff at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. Although

the medical evidence established that plaintiff suffers from the severe impairments of mood disorder and personality disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform work at all exertional levels, but he has a number of non-exertional limitations. Plaintiff is restricted to simple, repetitive tasks and can occasionally work with others. In addition, plaintiff is limited to understanding, remembering and carrying out simple instructions and using judgment to make simple work-related decisions. Further, plaintiff is capable of responding appropriately to supervision, co-workers and usual work situations and can deal with changes in a routine work setting on a sustained basis (collectively, the "RFC Finding").

Finally, in lieu of vocational expert testimony, the ALJ relied on Section 204.00 of the Medical-Vocational Guidelines (the "grids") and Social Security Ruling ("SSR") 85-15 to find plaintiff not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §1382c(a)(3)(B).

The Social Security Regulations specify a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment;

AO 72
(Rev. 8/82)

(3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and residual functional capacity.[1] 20 C.F.R. §416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ's decision is not supported by substantial evidence for the following reasons: (1) the ALJ failed to properly weigh the medical opinions issued by Dr. Welge, who was his treating psychiatrist, Dr. Zelazowski, who was a consultative examiner, and Dr. Fink, who was a state agency reviewing psychologist; and (2) the ALJ should not have relied solely on the grids, but rather should have elicited vocational expert testimony to evaluate his nonexertional impairments. The court finds no merit to plaintiff's contention concerning the ALJ's evaluation of the opinions of Dr. Welge,[2] Dr. Zelazowski[3] or Dr. Fink,[4] but concludes that the ALJ

---

[1] Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §916.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §416.945(a)(4).

[2] According to plaintiff, although the ALJ gave substantial weight to Dr. Welge's findings, the ALJ improperly ignored portions of Dr. Welge's treatment records that he contends support disability. As an initial matter, "no rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight." Wilkinson v. Commissioner of Soc. Sec., 558 Fed. Appx. 254, 256 (3d Cir. 2014). More specifically here, plaintiff only has identified a GAF score of 47 which he claims the ALJ ignored. Contrary to plaintiff's position, the ALJ's decision makes clear that he thoroughly evaluated Dr. Welge's treatment records, including GAF scores, which the ALJ noted were 50-55. (R. 24). A review of Dr. Welge's records indicates that he assessed plaintiff with a GAF score of 50-55 on six occasions, (R. 306, 307, 310, 314, 316, 324), but assessed a GAF score of 47-50 on only one occasion. (R. 308).

[3] Plaintiff argues that the ALJ erred by giving little weight to Dr. Zelazowski's findings from the consultative examination. The ALJ provided a legitimate reason for his decision in that regard, explaining that Dr. Zelazowski only examined plaintiff on one occasion. (R. 25). Nevertheless, we note that some of the limitations identified by Dr. Zelazowski are incorporated in the RFC Finding, such as the restriction to simple, repetitive tasks, simple work-related decisions and only occasionally working with others. (R. 23, 265).

[4] Plaintiff contends that the ALJ should not have relied on Dr. Fink's opinion because he did not indicate his medical speciality on the report he completed, which plaintiff argues is contrary to a provision of the Social Security Administration's Program Operations Manual System ("POMS") requiring that information. Although POMS is the authorized means for issuing official Social Security policy and operating instructions, and is a primary source of information used by Social Security employees to process claims for benefits, POMS do not have the force of law.

improperly relied on the grids in finding plaintiff not disabled. For that reason, the case must be remanded to the Acting Commissioner for additional consideration at step 5 of the sequential evaluation process.

As stated, instead of eliciting testimony by a vocational expert at step 5, the ALJ relied on Section 204.00 of the grids and SSR 85-15 to find plaintiff not disabled. The record is devoid of any indication that plaintiff was provided with advance notice of the ALJ's intent to rely on those sources instead of calling a vocational expert. This is contrary to the Third Circuit's admonition to provide advance notice in such situations as a matter of fairness. See Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005) ("If an agency will rely on rules as a substitute for individualized determination, and thus relieve the agency from the burden of producing evidence, we think advance notice should be given."). In Allen, the Third Circuit explained that "[w]hile the Agency can meet its burden by reference to a Ruling . . . nonetheless, the claimant should have the opportunity to consider whether [he] wishes to attempt to undercut the [Acting] Commissioner's proffer by calling [his] own expert. Obviously, this requires notice in advance of the hearing." Id. at 407-408. Where the Acting Commissioner fails to notify a claimant in advance of a hearing, it is "appropriate to give close scrutiny to the ALJ's reliance on a Ruling as satisfying the [Acting] Commissioner's burden at Step 5." Id. at 308; see also Meyler v. Commissioner of Soc. Sec., 238 Fed. Appx. 884, 890 (3d Cir. 2007) (close scrutiny of the ALJ's reliance on an SSR at step five is appropriate where the ALJ fails to provide advance notice to the claimant). Applying close scrutiny here, we conclude that the ALJ relied on SSR 85-15 in summary fashion without

---

See Edelman v. Commissioner of Soc. Sec., 83 F.3d 68, 71, n.2 (3d Cir. 1996). Therefore, Dr. Fink's failure to state his medical speciality does not mandate that the ALJ disregard his report. Further, the Regulations specify that state agency medical and psychological consultants, such as Dr. Fink, "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. §416.927(e)(2)(i). For these reasons, the ALJ did not err by referring to Dr. Fink's opinion. (R. 25).

explaining how plaintiff's particular mental work-related limitations are addressed by a specific aspect of that Ruling. See Allen, 417 F.3d at 404.

In a case where a claimant suffers from only nonexertional limitations, it is not improper for an ALJ to forego vocational expert testimony at step 5 and instead use the grids as a framework for decision making while relying upon an SSR to determine a claimant's occupational job base. See Allen, 417 F.3d at 404. However, an ALJ may not rely on an SSR in summary fashion without explaining how a claimant's particular work-related limitations are addressed by a specific aspect of the Ruling. See id. Indeed, a "conclusory reference" to an SSR is insufficient. See id. at 406. Rather, the ALJ must explain the "'fit' between the facts of a given case, namely, the specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the base." Id. Accordingly, if an ALJ wishes to rely on an SSR in lieu of vocational expert testimony, "it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Id. at 407.

Here, the ALJ relied on SSR 85-15 in finding plaintiff not disabled at step 5. The purpose of SSR 85-15 is to explain how the regulations provide a framework for decisions concerning individuals who have only nonexertional limitations. See SSR 85-15, 1985 WL 56857, at *1. SSR 85-15 provides examples of nonexertional limitations, which includes mental impairments, and their effects on the occupational base. Id. at *4-*6.

In this case, we find that the ALJ's reliance on SSR 85-15 was improper because he did not explain how any specific aspect of the Ruling addresses plaintiff's particular mental impairments. The ALJ stated that plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels" and found him "not disabled" under the framework

of Section 204.00 of the grids. (R. 26). In making this finding, the ALJ referred to SSR 85-15 and included the following "discussion" of that Ruling:

> SSR 85-15 provides that where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.

(R. 26). The ALJ then stated that "[b]ased on the relevant vocational factors and the functional limitations as noted above, . . . [plaintiff] can perform in a significant number of jobs existing in the national and regional economy under the framework of SSR 85-15." Id.

The ALJ's "discussion" of SSR 85-15 quoted above is copied verbatim from that Ruling. See SSR 85-15, 1985 WL 56857, at * 4. Although the ALJ was entitled to rely on SSR 85-15 as a substitute for taking vocational expert testimony, he was required to do more than simply quote language from the Ruling. See Meyler, 238 Fed. Appx. at 890 (ALJ's reliance on SSR 85-15 was improper where he failed to explain how the claimant's particular mental impairments relate to the categories or examples in the Ruling). Contrary to the requirement that the ALJ must demonstrate the "'fit' between the facts of a given case, namely, the specific nonexertional impairments, and the way in which the Rule dictates that such nonexertional limitations impact the base," see Allen, 417 F.3d at 406, here the ALJ's citation to SSR 85-15 was conclusory and failed to explain how any specific aspect of SSR 85-15 addresses plaintiff's particular mental limitations. The ALJ did not reference any of the categories or examples listed in SSR 85-15, nor did he specify how plaintiff's limitations would impact his ability to perform the mental demands of unskilled work.[5]

---

[5] According to SSR 85-15, the basic mental demands of unskilled work "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4. Although the ALJ included virtually identical language in the RFC Finding, the ALJ failed to discuss plaintiff's ability

For these reasons, the ALJ's step 5 finding is not supported by substantial evidence and this case must be remanded.

On remand, the ALJ must explain how plaintiff's specific mental limitations impact his ability to perform the basic mental demands of unskilled work in a job that constitutes substantial gainful employment. As stated by the Third Circuit, "[t]his can be accomplished by noting how SSR 85–15 is relevant and controlling—if indeed that is the case—or by obtaining the individualized assessment that SSR 85–15 seems to prefer by way of a vocational expert." Allen, 417 F.3d at 407.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Acting Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Acting Commissioner for further proceedings consistent with this Opinion.

                                                 /s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: R. Christopher Brode, Esq.
Brode Law Firm
305 Walnut Street
Meadville, PA 16335

Christian A. Trabold
Assistant U.S. Attorney
17 South Park Row
Room A330
Erie, PA 16501

---

to perform at least one of these requirements, that is the ability to respond appropriately to supervisors, coworkers and usual work situations. Despite the fact that Dr. Fink found plaintiff to be moderately limited in his "ability to accept instructions and respond appropriately to criticism from supervisors," (R. 60), and the ALJ found plaintiff has moderate difficulties with social functioning, (R. 23), the ALJ failed to address plaintiff's ability to meet those demands in making his conclusion at step 5. As stated in SSR 85-15, "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base," which in turn would justify a finding of disability. See SSR 85-15, 1985 WL 56857, at *4.